UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID O'REAR, a/k/a
DAVID CHRIS O'REAR,

    Plaintiff,

v.                                              CASE NO: 8:09-cv-1903-T-26TGW

GREENWICH INSURANCE COMPANY,

    Defendant.
_____/

**O R D E R**

Before the Court are cross motions for summary judgment in this action involving insurance coverage: (1) Defendant/Counterclaimant's Motion for Summary Judgment with attachments (Dkt. 42), the depositions of Keith Morrissey, Curtis Putrino, and David O'Rear (Dkts. 43, 44 & 45), Plaintiff's Memorandum in Opposition and Statement of Disputed Facts (Dkts. 52 & 53); and (2) Plaintiff/Counterclaim Defendant's Motion for Summary Judgment with attachments (Dkt. 48), the deposition of Stephen L. Mains (Dkt. 49), and Defendant's Response in Opposition and Statement of Disputed Facts.  (Dkts. 54 & 55).  After careful consideration of the cross motions, the applicable law, the insurance policy, and the underlying Second Amended Complaint, the Court concludes that Plaintiff's motion should be denied, and Defendant's motion should be granted.

**PERTINENT BACKGROUND**

This action is brought by David O'Rear, in his capacity as an assignee of rights under a Coblentz[1] agreement, against the insurer Greenwich Insurance Company (Greenwich) of the real estate brokerage The Crowley Group (Crowley) and its real estate agents Kenneth Morrissey and Curtis Putrino. Because Greenwich refused and failed to defend and to provide coverage for the two individual real estate agents and the broker in the underlying state court action,[2] O'Rear seeks in this action to recover damages in the amount of the stipulated judgment against all three insureds in addition to his attorney's fees and costs in prosecuting this action.

According to the operative Second Amended Complaint in the underlying lawsuit,[3] the scenario encompassed a joint venture or partnership among O'Rear, Morrissey, and Putrino which resulted in a large financial loss to O'Rear. Under the arrangement, Morrissey and Putrino located the real property known as 550 Putting Green Lane in

---

[1] Coblentz v. American Sur. Co. of N.Y., 416 F.2d 1059 (5th Cir. 1969). "Coblentz v. American Surety Co. of New York, involves an agreement for entry of a consent judgment against an insured in situations where the insurer declines to defend or offers to defend under a reservation of rights. 416 F.2d 1059 (5th Cir. 1969). In return for a stipulated judgment, the claimant agrees not to execute against the insured. Id." Mid-Continent Cas. Co. v. American Pride Bldg. Co., 601 F.3d 1143, 1147 at n. 2 (11th Cir. 2010).

[2] O'Rear v. Morrissey, Putrino, and The Crowley Group d/b/a Remax Properties, No. 2007 CA 683 NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

[3] See docket 42, Exh. 2–Second Amended Complaint in Case number 2007 CA 683 NC.

Longboat Key, Florida, which they agreed to convince the new purchaser to "flip" to the three of them.[4] The property was to be titled in O'Rear's name because he possessed good credit, with all three, O'Rear, Morrissey, and Putrino, pocketing a couple of hundred thousand dollars at the time of closing, ostensibly through real estate commissions and other machinations.[5] O'Rear would make the down payment and Morrissey and Putrino were to make the mortgage payments and pay any other expenses associated with the upkeep of the property until such time as they were "equally invested" or the property was sold to a new buyer.[6] The plan obviously backfired and O'Rear was out-of-pocket well over $385,000 at the time the underlying lawsuit was filed.[7]

The Second Amended Complaint contained eleven counts, eight of which were voluntarily dismissed and only three of which, counts VIII, X, and XI, involved the providing of real estate professional services under the errors and omissions policy at issue in this case. Counts VIII, X, and XI were the only ones that potentially could have

---

[4] See docket 42, Exh. 2, paras. 14-16.

[5] See docket 42, Exh. 2, paras. 17-23 & 25.

[6] See docket 42, Exh. 2, paras. 23-25.

[7] Although not alleged in the Second Amended Complaint, the Coblentz agreement contains a stipulation of facts. Those facts reflect that Morrissey and Putrino failed to perform even the most minimal due diligence research required of real estate agents to ascertain the lowest asking price from available resources with regard to the 550 Putting Green Lane property. Their negligence resulted in the purchase of the property at $255,000 more than the lowest list price.

triggered the duty to defend under the policy. Count VIII alleged negligence against Morrissey and Putrino in the performance of real estate services, and counts X and XI alleged negligent supervision and vicarious liability under respondeat superior against Crowley in the performance of those real estate services. A stipulated judgment was entered in the amount of $750,000 against the insureds.

When Greenwich was first notified of the filing of the underlying lawsuit, it refused to defend the suit and denied coverage.[8] Greenwich refused to defend and rejected coverage based on Exclusion K of the policy as well as the absence of any claim arising out of the performance of real estate services.

## TERMS OF THE POLICY

The "Real Estate Professional Errors and Omissions Policy" at issue in this case provides coverage for an insured's "act or omission including personal injury in the performance of real estate services by the Insured."[9] The policy defines real estate services in pertinent part as "those professional services performed for others in the Insured's capacity as a real estate agent, real estate broker, . . ." Exclusion K of the policy states that the policy does not defend or pay any claim "based on or arising out of the purchase of property by, . . . 2. any entity in which any Insured had a financial interest or a contemplated financial interest."

---

[8] See docket 42, Exhs. 3 & 4.

[9] See docket 42, Exh. 1.

## SUMMARY JUDGMENT STANDARD

Both parties move for summary judgment on the issues of duty to defend and duty to indemnify. Summary judgment is properly granted where there is no genuine issue of material fact. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), then the opposing party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party's evidence must be believed and all justifiable inferences must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Credibility determinations, however, are best addressed at a trial on the merits. Anderson, 477 U.S. at 255, 106 S.Ct. at 1513-14.

## ANALYSIS

This case was removed from state court based on diversity of citizenship.[10] The parties agree that Florida's insurance law governs this case in determining whether Greenwich owed to the insureds a duty to defend and a duty to indemnify.

### *Duty to Defend*

Under Florida law, an insurer has a duty to defend, which is separate from the duty to indemnify. See First Am. Title Ins. Co. v. National Union Fire Ins. Co., 695 So.2d

---

[10] See docket 1.

475, 476 (Fla.Dist.Ct.App. 1997). The duty to defend is determined solely by the factual allegations of the complaint. Id. at 476 (citing National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977)). "[A]n insurer has no duty to defend a suit against an insured if the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy." McCreary v. Florida Residential Property and Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla.Dist.Ct.App. 1999).

Although the alleged facts may fall within the coverage of the policy, if the face of the complaint shows the applicability of an exclusion, the insurer has no duty to defend. See Landis v. Allstate Ins. Co., 546 So.2d 1051, 1052 (Fla. 1989). Exclusionary clauses are construed liberally in favor of the insured. See Union Amer. Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. Dist.Ct.App. 2000). "Where the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim." Chicago Title Ins. Co. v. Northland Ins. Co., 31 So.3d 214, 216 (Fla.Dist.Ct.App. 2010) (citing Keen v. Florida Sheriffs' Self-Ins. Fund, 962 So.2d 1021, 1024 (Fla.Dist.Ct.App. 2007)).[11]

---

[11] Plaintiff relies on an unpublished opinion in support of his argument that there is an equitable exception to the rule that only the allegations of the complaint and language of the policy determine the duty to defend. See First Specialty Ins. Corp. v. 633 Partners, Ltd., 300 Fed. Appx. 772 (11th Cir. 2008) (unpublished). As noted by Defendant, the Keen case cited by the Eleventh Circuit in First Specialty is different from the one relied on in this order, and the Eleventh Circuit makes it clear that the cases cited in First Specialty "depart from the general principle of determining the duty to defend only from the allegations in the complaint and are also readily distinguishable from the present case." First Specialty, 300 Fed. Appx. at 785. This Court finds that this case at

The operative complaint by which the duty to defend is determined is the Second Amended Complaint. The relevant three counts are enumerated VIII, X, and XI, for negligence against the two individual real estate agents, and negligent supervision and vicarious liability against Crowley. To the extent those counts incorporate other paragraphs of the complaint,[12] those additional allegations are also relevant. The pertinent allegations are as follows:

> 14. . . . he (Morrissey) believed the Defendants [Morrissey, Putrino, and Crowley] could convince the new purchaser of the 550 Putting Green Lane Property to "flip" said property to O'Rear, Morrissey, and Putrino, if O'Rear was willing to join in a partnership with Morrissey and Putrino.
> . . .
> 17. . . . Morrissey and Putrino represented to O'Rear that they had contacts who could obtain for their proposed joint venture with O'Rear a construction loan that would lend the venture up to ninety percent (90%) of the completed value of a new residence to be built on the property at 550 Putting Green Lane and that this would mean that the Defendants and O'Rear could "pocket a couple of hundred dollars" at the time of the closing of the loan, thereby effectively making the proposed partnership a profit even before they sold the home.
> . . .
> 18. . . . a third scenario and alternative for the joint venture would be to list the property for sale "as is" or on a "to be built" basis . . .
> . . .

---

hand is also readily distinguishable from the two aberrant cases cited in First Specialty: Nationwide Mutual Fire Ins. Co. v. Keen, 658 So.2d 1101 (Fla.Dist.Ct.App. 1995), and Underwriters at Lloyds London v. STD Enters, Inc., 395 F.Supp.2d 1142 (M.D. Fla. 2005).

[12] Counts VIII, X and XI incorporate by reference paragraphs 1 through 53 of the complaint.

20. . . . Morrissey and Putrino represented that if O'Rear would join in the proposed partnership with Morrissey and Putrino, Morrissey and Putrino would put back into the partnership their shares of the real estate commission on the acquisition of the 550 Putting Green Lane Property, . . .

21.  . . .[Morrissey and Putrino had been O'Rear's real estate agents since summer 1997]  As a result of his [O'Rear's] abiding confidence in his two (2) agents, now to be his two (2) partners, O'Rear agreed to the partnership and the purchase of the subject property . . .

22.  O'Rear eventually agreed to form a joint venture with the Defendants for the purchase of the 550 Putting Green Lane Property, the material terms of which agreement were memorialized in a writing signed by Morrissey on Crowley Group stationary, . . .

23.  The parties agreed that O'Rear would purchase the 550 Putting Green Lane Property in his individual name and utilize his good credit to obtain a mortgage on the property, solely in his name, and that he would utilize his funds for the entire down payment and other costs associated with the initial acquisition of the property.

. . .

25. . . . O'Rear did, in fact, purchase the 550 Putting Green Lane Property, in his individual name, and utilized his good credit to obtain a mortgage on the property, solely in his name, and utilized his funds for the entire down payment and other costs associated with the initial acquisition of the property. . . .

. . .

109.  As O'Rear's real estate agents, Morrissey and Putrino owed a duty to O'Rear to use reasonable care and professional skill in recommending the purchase of properties to O'Rear and in providing him with information regarding same.

110.  Morrissey and Putrino breached that duty by engaging in self-dealing with O'Rear and by providing O'Rear with false, misleading and/or inaccurate information and/or by making representations of material facts to O'Rear without knowing the truth or falsity of such statements.

O'Rear must first establish that the allegations of the complaint bring the case within the coverage of the policy. <u>McCreary</u>, 758 So.2d at 695. The policy requires coverage for "the performance of real estate services by the Insured" and further defines real estate services as those "professional services performed for others in the Insured's capacity as a real estate agent" or broker. The policy applies to claims "arising out of" the performance of real estate services by the insureds. The complaint clearly alleges facts that trigger coverage insofar as Morrissey and Putrino, supervised by Crowley Group, recommended the joint venture to purchase the 550 Putting Green Lane property. Morrissey and Putrino were acting as real estate agents by locating the property and receiving commissions on the sale.

Having established that the facts alleged would be covered by the policy, the Court must next determine whether the application of an exclusion is readily apparent from the face of the complaint. <u>Landis</u>, 546 So2d at 1052. The main contention with respect to Exclusion K is whether the fact that the property was purchased in O'Rear's individual name, as opposed to the joint venture's name, defeats the exclusion. O'Rear raises the issue of the timing of the creation of the joint venture or partnership. He argues that the partnership or joint venture was not reduced to writing until after the 550 Putting Green Lane property was purchased in the sole name of O'Rear. No authority on point has been found.

A reading of the allegations establishes that O'Rear would not have purchased the 550 Putting Green Lane property but for the existence of the joint venture or partnership with Morrissey and Putrino, and would not have suffered any damages. The memorialization of the partnership attached to the complaint is not dated; however, the allegations establish that all three individuals were discussing and had agreed on the joint venture with its purpose to purchase the 550 Putting Green Lane property before the closing on the property. It was discussed among the three individuals that the property would be put in O'Rear's name because of his good credit and ability to pay the deposit and down payment. See Chicago Title, 31 So.2d at 216-217 (holding that regardless of whether liability was based on negligence, the misappropriation of funds fell within an exclusion of the policy at issue and Chicago Title would have had no obligation to pay damages "but for" the misappropriation).

The precise language of the exclusion applies to a claim "arising out of" the purchase of property by an entity "in which any Insured had . . . a contemplated financial interest." From the face of the complaint, both Morrissey and Putrino had a contemplated financial interest in the purchase of the property. The technicality of the property being placed in O'Rear's individual name only does not render the exclusion inapplicable. O'Rear never would have purchased the property without the joint venture in place because, as the allegations attest, Morrissey and Putrino were going to make the mortgage payments and pay the expenses associated with the property. Whatever the facts turned

out to be after the closing has no bearing on whether the exclusion applies. See Chicago Title, 31 So.2d at 216 (citing Kopelowitz v. Home Ins. Co., 977 F.Supp. 1179, 1187 n. 3 (S.D. Fla. 1997), which cites Spencer v. Assurance Co., 39 F.3d 1146, 1148 (11th Cir. 1994), for the proposition that notwithstanding an insurer's refusal to defend leading to the insured's entering into a consent judgment, only eight corners of complaint and policy are used in determining duty to defend and coverage).

*Duty to Indemnify*

Under Florida law, "[t]he duty to indemnify is narrower than the duty to defend, and there must be a determination that coverage exists before a duty to indemnify arises." McCreary, 758 So.2d at 695 (quoting Illinois Ins. Exch. v. Scottsdale Ins. Co., 679 So.2d 355, 358 (Fla.Dist.Ct.App. 1996)). Having found that no duty to defend exists, there is no concomitant duty to indemnify. See Allstate Ins. Co. v. Safer, 317 F.Supp.2d 1345, 1358 (M.D. Fla. 2004); WellCare of Fla., Inc. v. American Int'l. Specialty Lines Inc. Co., 16 So.3d 904, 906 (Fla.Dist.Ct.App. 2009). Thus, Greenwich had no duty to pay O'Rear the amount of the consent judgment entered in the state court case.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) 1) Defendant/Counterclaimant's Motion for Summary Judgment (Dkt. 42) is **GRANTED.**

(2) Plaintiff/Counterclaim Defendant's Motion for Summary Judgment (Dkt. 48) is **DENIED.**

(3)   The clerk is directed to enter judgment for Defendant and against Plaintiff.

(4)   The clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on November 23, 2010.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record